Eliza W. Osborne, Appellant, v. The Auburn Telephone Company, Respondent.

1. Streets — Conveyance of Fee, Subject to Public Easement. Where a deed conveys all the land within certain boundaries, which include the north half of a public highway, and then specifically reserves for a road the strip of land "which now constitutes the north half of the highway, * * * opened to the public," such conveyance operates to vest in the grantee the fee of said strip, subject, however, to the easement of the public thereon for the purpose of a road or highway.

2. Injunction Restraining Telephone Company from Erecting Poles and Wires on Public Street. The owner of the fee of land to the center of a city street, subject to the easement of the public thereon for the purpose of a road or highway, is entitled to an injunction enjoining and restraining a telephone company, which has not obtained his consent, from entering upon such land for the purpose of digging holes and erecting poles for the stringing of wires, and, also, to damages for injuries caused thereby to the shade trees upon such land, notwithstanding the telephone company had been granted a franchise by the city to use the street for the erection of poles and the stringing of wires, since such use of the street is not a use deemed to be within the grant of the land for street purposes, but is an additional burden upon the fee for which compensation must be made to the owner.

Osborne v. Auburn Telephone Co., 111 App. Div. 702, reversed.

(Argued October 15, 1907; decided November 1, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 12, 1906, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

John Van Sickle for appellant. Plaintiff owned to the center of the street subject only to the easement. (*Hennessy* v. *Murdock*, 137 N. Y. 317; *Mott* v. *Mott*, 68 N. Y. 246; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Huberman* v. *Baker*, 128 N. Y. 253; *Mangam* v. *Sing Sing*, 11 App. Div. 212; *Matter of Mayor*, etc., 20 App. Div. 404; 155 N. Y.

638; *Matter of Ladue,* 118 N. Y. 219; *Paige* v. *S. R. R. Co.,* 178 N. Y. 111; *Craig* v. *Wells,* 11 N. Y. 315.) Defendant had no right to enter upon the lands in question and erect its poles and wires thereon, or to dig up and carry away the soil, without obtaining plaintiff's consent or legally condemning the right. (*Presbyterian Society* v. *A. & R. R. R. Co.,* 3 Hill, 567; *Williams* v. *N. Y. C. R. R. Co.,* 16 N. Y. 97; *Wager* v. *T. U. R. R. Co.,* 25 N. Y. 526; *Craig* v. *R. C. R. R. Co.,* 39 N. Y. 404; *Wash. Cemetery* v. *P. P. & C. I. R. R. Co.,* 68 N. Y. 591; *Story* v. *N. Y. El. Ry. Co.,* 90 N. Y. 122; *Lynch* v. *M. E. R. Co.,* 129 N. Y. 274; *Bowen* v. *D., L. & W. R. R. Co.,* 153 N. Y. 476; *Coatsworth* v. *L. V. Ry. Co.,* 156 N. Y. 451; *Peck* v. *S. Ry. Co*, 170 N. Y. 298; *Paige* v. *S. Ry. Co.,* 178 N. Y. 102.) Telephone companies have no greater right to use the streets of cities and villages for their poles and wires, without consent of the property owner, than they have to use rural highways (*Story* v. *N. Y. El. Ry. Co.,* 90 N. Y. 138; *Peck* v. *S. Ry. Co.,* 170 N. Y. 303; *Paige* v. *S. Ry. Co.,* 178 N. Y. 102; *Miller* v. *N. Y. & N. S. Ry. Co.,* 183 N. Y. 128; *N. U. T. Co.* v. *Marsh,* 96 App. Div. 122; *N. U. T. Co.* v. *West,* 66 App. Div. 616; *M. T. Co.* v. *C. L. Co.,* 18 J. & S. 488; *Dusenbury* v. *M. T. Co.,* 11 Abb. [N. C.] 440; *Tiffany & Co.* v. *N. Y. Il. Co.,* 19 J. & S. 280; *Powers* v. *S. L. T. Co.,* 102 N. Y. Supp. 34.)

*A. C. Aiken* and *Hull Greenfield* for respondent. Plaintiff had no title to Fitch avenue. (*Hennessy* v. *Murdock,* 137 N. Y. 321; *Blackman* v. *Striker,* 142 N. Y. 555; *Vail* v. *L. I. R. R. Co.,* 106 N. Y. 283; *French* v. *Carhite,* 1 N. Y. 96; *De Witt* v. *E. T. R. Co.,* 134 N. Y. 495; *Saunders* v. *Hanes,* 44 N. Y. 353; *Mayor, etc.,* v. *N. Y. C. & H. R. R. R. Co.,* 69 Hun, 324; *C. I. Co.* v. *Mayor, etc.,* 166 N. Y. 92.). The erection of telephone poles and the stringing thereon of wires is a proper use of the highway in a city and no compensation can be exacted by a person who owns to the center of the street. (*Eels* v. *A. T. & T. Co.,* 143 N. Y. 142; *Pal-*

*mer* v. *L. El. Co.*, 158 N. Y. 236; *Johnson* v. *N. Y. & P. A. T. Co.*, 76 App. Div. 504; *Wickes* v. *N. Y. & N. J. T. Co.*, 86 App. Div. 257; *J. B. Assn.* v. *Bell Telephone Co.*, 88 Mo. 258; *Cater* v. *N., etc., Co.*, 60 Minn. 539; *People* v. *Eaton*, 100 Mich. 208; *Hershfield* v. *R. M., etc., Co.*, 12 Mont. 102; *Lockhart* v. *Railway Co.*, 139 Penn. St. 419; *Magee* v. *Overshiner*, 150 Ind. 127.)

Haight, J. This action was brought to enjoin and restrain the defendant from entering upon the lands of the plaintiff in Fitch avenue, for the purpose of digging holes and erecting telephone poles for the stringing of wires, and also for damages, which had been sustained, to the shade trees.

The defendant was a domestic corporation organized under the laws of the state of New York for the purpose of maintaining and operating a telephone exchange in the city of Auburn and vicinity, and had been granted a franchise by the city to use the streets for the erection of poles and the stringing of wires.

The plaintiff was the owner of a parcel of land situate at the corner of Fitch avenue and South street in that city. Formerly one Abijah Fitch was the owner of the lands on which Fitch avenue, 100 links in width, had been laid out, and on or about the 13th day of April, 1865, as the court has found, he conveyed to the plaintiff the lands described as follows: "All that tract of land in the city of Auburn, bounded and described as follows, beginning in the west line of South street at a point 20 rods south of the southeasterly corner of land now owned and occupied by William C. Beardsley, running thence westerly on the south line of land now owned by party of second part 76 rods and 6 links to the westerly line of the farm of the late Joseph C. Richardson, deceased, thence southerly 51½ links to the center of Fitch avenue; thence east along the center of said avenue 76 rods and 6 links to the west line of South street; thence north on the line of said South street to place of beginning, being 51½ links; reserving 50 links in width the whole distance from east to west for a road

and which now constitutes the north half of Fitch avenue, the whole distance of said Richardson farm which has been opened to the public." We here have first an absolute conveyance to the plaintiff of the fee of the north half of Fitch avenue, then follows a reservation for a road which had then been opened to the public. We think that this conveyance operated to vest in the plaintiff the fee, subject, however, to the easement of the public thereon for the purpose of a road or highway. (*Myers* v. *Bell Telephone Co.*, 83 App. Div. 623.)

We are thus again presented with the question as to whether the erection and maintaining of telephone and telegraph poles in the street is an additional burden upon the fee in which compensation must be made to the owner. The answer to this question depends upon the further question as to whether the maintaining of telephone and telegraph poles for the purpose of stringing wires thereon is a street use and deemed to be within the grant of the lands for highway purposes. This question was distinctly answered in the negative in the case of *Eels* v. *American T. & T. Co.* (143 N. Y. 133), and again in *Palmer* v. *Larchmont Electric Co.* (158 N. Y. 231). In the latter case we called attention to the distinction between a municipal purpose and a street purpose, saying : "The primary object of highways is for the public travel by persons and animals, and by carriages or vehicles used for the transportation of persons and goods, other than by railroads. Sewers drain the surface water from the highways, and thus relieve them from impairment and destruction. In this respect sewers are for a street purpose. In addition, they may drain also the abutting property and houses and thus tend to promote the public health. In this respect they are for a municipal purpose. Water supplied by mains through the highways may be used for cleansing and sprinkling the streets. In this respect it is for a street purpose. It may be used by the abutting owners for cleansing and for domestic purposes, and may also be used for the extinguishment of fires. In this respect it is for a municipal purpose. Light is an aid to the public in the night

time in traveling upon the highway. It is, therefore, used for a street purpose. All of the street purposes which we have referred to are clearly incident to the highway and are deemed within the grant of lands for highway purposes whenever the necessity for these uses arises. Not so with telegraph and telephone wires. They in no way preserve or improve the streets or aid the public in traveling over them." When the streets have been appropriated for the construction of sewers, the laying of water mains or gas pipes for street purposes, such sewers, mains and pipes may also be used by the public for municipal purposes. But the use of the street for municipal purposes or individual purposes, independent of its use for street purposes, is an additional burden upon the fee not included in the grant of the lands for highway purposes. We are aware that in recent years our highways and streets have been appropriated for municipal and individual uses in many instances. Subways, conduits and pipe lines have been constructed for the transmission of electricity, steam and other products, for other than street purposes. Cities which own the fee in the streets may contract, lease or grant their use for public or municipal purposes not inconsistent with nor prejudicial to the public easement or use for street purposes. In such cases the fee having been transferred to the municipality, it can grant rights in the streets other than for street purposes which do not impair the public easement. We, therefore, cannot recognize the uses to which highways have been subjected in recent years as changing the law or the property rights of individuals.

The learned Appellate Division appears to have entertained the view that there was a distinction between rural and urban property. It is undoubtedly true that the use of highways is many times greater in cities than it is in country towns. We had occasion to consider this question to some extent in the case of *Palmer* v. *Larchmont Electric Co.* (*supra*), and in addition to what we then said we only wish to remark that the fee to lands in the city is as sacred to the owner as it is in the country, and that in either place he is

protected by the constitutional provision, to the effect that property shall not be taken for public purposes without compensation.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WERNER and WILLARD BARTLETT, JJ., concur; HISCOCK, J., not voting.

Judgment reversed, etc.