Erie Buffalo TONDAS, Plaintiff,

v.

AMATEUR HOCKEY ASSOCIATION OF the UNITED STATES, New York Penn Jr. B League, Angie Federiko, Harold P. Johnson, William B. Croft, Harold Trumble, Raymond Cotter, Frank Downey, Fred Rossi and Raymond Mang, Defendants.

Civ. No. 74–487.

United States District Court, W. D. New York.

Oct. 6, 1977.

R. William Stephens, Raichle, Banning, Weiss & Halpern, Buffalo, N. Y., for plaintiff.

James S. Morris, Whitman & Ransom, New York City, for defendants.

Williams, Stevens, McCarville & Frizzell, P. C., Buffalo, N. Y., for defendants Croft, Trumble & Am. Hockey Asso.

Arnold N. Zelman, Brennan, Callahan, Tesseyman, Zelman & Runfola, Buffalo, N. Y., for defendant Federiko.

William J. Cotter, Buffalo, N. Y., for defendant Cotter.

Charles H. Dougherty, Albrecht, Maguire, Heffern & Gregg, Buffalo, N. Y., for defendant Downey.

John E. Runals, Runals, Broderick, Shoemaker, Rickert, Berrigan & Doherty, Niagara Falls, N. Y., for defendants Johnson & Mang.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

Plaintiff commenced this private antitrust action for treble damages and injunctive relief pursuant to sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. Plaintiff alleges that defendants have combined, agreed and conspired among themselves and with others to unreasonably restrain and monopolize, and have unreasonably restrained and monopolized, interstate trade and commerce in amateur hockey in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Plaintiff further alleges that defendants wrongfully and maliciously interfered with its franchise and contract rights and business relations.

Defendants Amateur Hockey Association of the United States ("AHAUS"), Croft and Trumble have moved for summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure. They allege that plaintiff and AHAUS are not engaged in "trade" or "commerce" within the meaning of the Sherman Act, that the complaint fails to state a claim upon which relief can be granted under the antitrust laws, and that plaintiff lacks standing to bring this action. Defendant Cotter has moved to dismiss the complaint as to him alleging that he is not a proper party. Defendants Rossi and New York Penn Jr. B League have moved to dismiss for failure to join an indispensable party and for failure to state a claim upon which relief can be granted.

■ The purpose of the Sherman Act was to promote competition by preventing unreasonable restraints to interstate trade or commerce. *Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); *United States v. American Tobacco Co.*, 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663 (1911); *Chicago Board of Trade v. United States*, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918). The comprehensive language of the Sherman Act shows that Congress intended to utilize its Commerce Clause power to the fullest extent and that the Act should apply to every person who agrees or conspires to restrain or monopolize commercial intercourse among the states. *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 553, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Although the Act was primarily aimed at conduct which had commercial objectives, the Supreme Court has indicated that organizations which have other than commercial purposes are subject to the Act. *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 487–88, 60 S.Ct. 982, 84 L.Ed. 1311 (1940); *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 213 (fn. 7), 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).

■ In the case nearest in point it was held that, if a non-profit amateur sports association involved solely in amateur athletics contracts, agrees or conspires to restrain trade or commerce in commercially sold articles, it is subject to the antitrust laws. *Amateur Softball Ass'n of America v. United States*, 467 F.2d 312 (10th Cir. 1972). Even though an amateur athletic association's primary purpose is non-commercial, its subsequent actions in carrying out its laudable objectives could trigger the applicability of the Sherman Act if such conduct restrained interstate trade or commerce in an unreasonable manner. Thus, a non-profit athletic association formed for the purpose of promoting amateur athletics, such as AHAUS, may be found to be engaging in conduct which results in an unreasonable restraint of trade or commerce.

■ The terms "trade" or "commerce" have been interpreted in a broad, rather than restrictive, fashion. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct.

2004, 44 L.Ed.2d 572 (1975); *United States v. National Ass'n of Real Estate Boards*, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950). It is sufficiently established that professional sports, with the exception of baseball, engage in "trade" or "commerce" as those terms are defined in the Act. *Radovich v. National Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); *United States v. International Boxing Club of New York, Inc.*, 348 U.S. 236, 75 S.Ct. 259, 99 L.Ed. 290 (1955). Non-profit athletic associations which sanction and regulate professional tournaments, races and other contests are subject to the antitrust laws. *Deesen v. Professional Golfers' Ass'n of America*, 358 F.2d 165 (9th Cir. 1966); *Heldman v. United States Lawn Tennis Ass'n*, 354 F.Supp. 1241 (S.D.N.Y.1973); *STP Corporation v. United States Auto Club, Inc.*, 286 F.Supp. 146 (S.D.Ind.1968). In view of the broad reach of the Sherman Act and the expansive interpretation given "trade" or "commerce", an exemption for amateur athletics is unwarranted. Agreements entered into by an amateur athletic association which restrict the activities of an amateur team should be judged by the rule of reason. An evaluation to determine the reasonableness of the restraint placed on the amateur team should not be foreclosed by carving out an absolute exception to the applicability of the antitrust laws.

Summary judgment is a drastic device which can only be granted when there is no genuine issue as to any material fact. *Gladstone v. Fireman's Fund Insurance Co.*, 536 F.2d 1403, 1406 (2d Cir. 1976). Dismissal of a complaint before any discovery has taken place is even more drastic. *Egelston v. State University College at Geneseo*, 535 F.2d 752 (2d Cir. 1976). When making a determination on a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975); *Judge v. City of Buffalo*, 524 F.2d 1321 (2d Cir. 1975). Moreover, the Supreme Court has cautioned that summary procedures should be used sparingly in complex antitrust litigation. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

The affidavits submitted by both parties reveal that there are material factual issues in the present case. Plaintiff alleges that amateur hockey is not merely a sport but is a large commercial enterprise, which is organized and operated for the benefit and profit of the individual teams. Defendants deny this and assert that the funds raised by AHAUS and its members are used solely to defray expenses and to promote the development of amateur hockey. Plaintiff alleges that it competed for patrons with the teams affiliated with the New York Penn Jr. B League. Defendants disclaim that any economic competition existed between the plaintiff and such teams.

Plaintiff alleges that defendants were motivated by financial considerations to eliminate it as a competing amateur hockey team in the Buffalo area. In addition, plaintiff alleges that these financial considerations were discussed by the defendants prior to the refusal of the AHAUS to allow plaintiff to play its games in North Tonawanda. Defendants assert that the decision of the AHAUS to withhold such permission was not motivated by any economic anticompetitive scheme or purpose, but was made in order to develop American amateur hockey and improve the quality of young American amateur hockey players. Also, defendants deny that financial considerations were discussed at certain meetings conducted prior to the decision of the AHAUS to refuse to permit plaintiff to play in North Tonawanda. Plaintiff alleges that AHAUS has considerable economic and market power, but defendants refute this contention and assert that AHAUS strictly adheres to its charitable, educational and scientific objectives and purposes. Because of these material factual issues, summary judgment is precluded.

AHAUS, Croft and Trumble further urge that summary judgment should be granted because plaintiff and AHAUS are not competitors. Defendants' reliance, however, on

*San Francisco Seals, Ltd. v. National Hockey League*, 379 F.Supp. 966 (C.D.Cal.1974), is misplaced. That case merely held that a professional hockey league team does not compete in an economic sense with its league and other league members, and thus territorial restraints imposed on a member by its own league do not violate the Sherman Act. In the present case, plaintiff contends that it competed for patrons with the teams affiliated with the New York Penn Jr. B League, not the teams associated with the Southern Ontario Junior Hockey League to which it belonged. Thus, the present case is distinguishable because it cannot be said as a matter of law at this point that the conduct of AHAUS did not restrain economic competition.

In addition, AHAUS is not immunized from the antitrust laws simply because it is not a competitor of the injured party. A non-competitor who agrees, contracts or conspires with another to restrain trade or commerce is subject to the antitrust laws. *United States v. General Motors Corp.*, 121 F.2d 376, 404 (7th Cir. 1941). Although AHAUS alleges that it does not directly compete with plaintiff, any agreement, contract or conspiracy between it and another party which unreasonably restrained interstate trade or commerce would be violative of section 1 of the Sherman Act.

Defendants' contention that plaintiff has failed as a matter of law to state a claim pursuant to section 2 of the Sherman Act lacks merit. As stated earlier, the market power possessed by AHAUS remains open to debate. Plaintiff's affidavits contain sufficient allegations of economic power to surmount a motion for summary judgment.

Defendants' arguments that plaintiff lacks standing to sue pursuant to section 4 of the Clayton Act and that the requested injunctive relief should be foreclosed are equally unavailing. Viewing the complaint and accompanying affidavits in the light most favorable to plaintiff, I cannot rule as a matter of law at this stage of the proceedings that plaintiff was not in fact injured by the alleged violations or

that irreparable damage is missing. Issues of fact exist with regard to both questions. Unless there is no genuine issue of fact with respect to the damages sustained by plaintiff, summary judgment is inappropriate. *Carswell Trucks, Inc. v. International Harvester Co.*, 334 F.Supp. 1238 (S.D.N.Y. 1971).

Defendant Cotter has moved to dismiss the complaint as to him on the ground that he is not a proper party. He contends that the Amherst Youth Hockey Association, Inc., of which he is a director, is the proper party to be sued and should defend in his stead. This contention is wide of the mark. A cause of action in a private antitrust suit for treble damages is a tort action. *Northwestern Oil Co. v. Socony-Vacuum Oil Co.*, 138 F.2d 967, 970 (7th Cir. 1943), *cert. denied*, 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081 (1944). As such, a conspirator in a private antitrust action is a joint tortfeasor and is jointly and severally liable. An action brought pursuant to section 4 of the Clayton Act will thus lie against any party who committed the alleged offense. *State of Washington v. American Pipe & Construction Co.*, 280 F.Supp. 802, 804 (S.D.Cal.1968). If Cotter himself participated in the alleged conspiracy, he would be personally liable under the antitrust laws regardless of whether another party, such as the Amherst Youth Hockey Association, Inc. which might have also participated in the conspiracy, was or was not sued by the injured party. Rule 17(b) of the Federal Rules of Civil Procedure does not require that the corporation itself be sued in a private antitrust action, but only comes into play when an injured party in such an action chooses to sue the corporation directly.

Defendants Rossi and New York Penn Jr. B League have moved to dismiss for failure to join indispensable parties. It is settled that defendants who are charged as members of a conspiracy to violate the antitrust laws cannot insulate themselves from liability by claiming the indispensability of fellow conspirators. *Martin v. Chan-*

*dler*, 85 F.Supp. 131 (S.D.N.Y.1949); *United States v. National Lead Co.*, 63 F.Supp. 513 (S.D.N.Y.1945), *aff'd*, 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077 (1947).

It is therefore hereby

ORDERED that all motions made by defendants are denied.