**In re the Marriage of Kathy E. MOODY, Appellant-Respondent,**

**v.**

**Lonnie M. MOODY, Appellee-Petitioner.**

**No. 1–485A99.**

Court of Appeals of Indiana,
First District.

Feb. 3, 1986.

Steven J. Radford, Patricia L. Brown, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant-respondent.

John J. Thomas, Thomas & Thomas, Brazil, for appellee-petitioner.

ROBERTSON, Presiding Judge.

Respondent-appellant Kathy Moody (Kathy) appeals from the judgment of the Clay Superior Court dissolving her marriage with petitioner-appellee Lonnie Moody (Lonnie) and awarding custody of their minor child, Lonna, to the maternal grandparents.

We affirm.

Kathy and Lonnie were married on April 6, 1979. Their child, Lonna, was born on November 21, 1980. In July, 1982, the family moved from Indiana to Texas. Lonnie and Kathy separated in December, 1983, and Lonnie returned to Indiana. Kathy and Lonna relocated to Indiana in July, 1984, but they moved to Missouri two months later. On September 28, 1984, Lonnie filed his petition for dissolution of marriage.

The following issues, which have been consolidated and restated, are presented on appeal:

(1) Whether the trial court had subject matter jurisdiction to dissolve the marriage of the parties, pursuant to IND.CODE § 31-1-11.5-6;

(2) Whether the trial court had subject matter jurisdiction to determine the custody of the minor child, pursuant to the Uniform Child Custody Jurisdiction Law;

(3) Whether the trial court abused its discretion by awarding custody of the minor child to the maternal grandparents.

ISSUE ONE:

■■■■ In her first allegation of error, Kathy contends that the Clay Superior Court did not have jurisdiction over the dissolution proceeding, because neither Kathy nor Lonnie had been a resident of Indiana for the six months immediately preceding the filing of Lonnie's petition. IND. CODE § 31-1-11.5-6 (Supp.1984) stipulates:

At the time of the filing of a petition pursuant to section 3(a) or 3(c) of this chapter, at least one (1) of the parties shall have been a resident of the state or stationed at a United States military in-

stallation within the state for six (6) months immediately preceding the filing of each petition.

Lonnie moved to Indiana in December of 1983, nine months before he instituted divorce proceedings. Kathy stresses, however, that Lonnie lived and worked in Tennessee for approximately three months in 1984, returning to Indiana in late June or early July. According to Kathy, Lonnie was a resident of Indiana within the meaning of I.C. 31–1–11.5–6 for only three months.

The residency requirement of I.C. 31–1–11.5–6 refers to legal residence or domicile. *In re Marriage of Bates,* (1985) Ind.App., 474 N.E.2d 140, 143. The term domicile is defined as the place where a person has his true, fixed, permanent home and prinicpal establishment, and to which place he has, whenever he is absent, the intention of returning. *In re Marriage of Rinderknecht,* (1977) 174 Ind.App. 382, 386, 367 N.E.2d 1128, 1131. Thus Lonnie's intent is relevant to the inquiry whether he was a resident of Indiana for the six months preceding September 28, 1984.

Lonnie explained that he went to Tennessee to look for work and that he returned to Indiana when he could not find suitable employment. Lonnie expressly testified that he did not go to Tennessee to change his residence. The continuity of Lonnie's residence in Indiana was interrupted temporarily and for the sole purpose of seeking suitable employment.

A similar factual situation was presented in *In re Marriage of Hudson,* (1982) Ind. App., 434 N.E.2d 107. The wife in that case had moved to Indiana approximately eight months before she filed a petition for dissolution. However, the continuity of her Indiana residence was broken for several months when she went to the state of Washington to gather some personal belongings, to encourage her husband to consider marriage counseling and to urge her husband to set up a home for her in Indiana. The wife returned to Indiana three months before she commenced divorce proceedings.

The *Hudson* court decided that the jurisdictional requirements of I.C. 31–1–11.5–6 had been satisfied. 434 N.E.2d at 112. The wife had left Indiana for the sole purpose of arranging her affairs and with the intention of returning to Indiana for an indefinite period of time. *Id.* Guided by the *Hudson* decision, we conclude that the Clay Superior Court had jurisdiction over the marital status of Lonnie and Kathy.

ISSUE TWO:

■ For her second issue, Kathy maintains that the trial court lacked jurisdiction to determine the custody of the minor child, Lonna. Jurisdiction of a child custody proceeding instituted by the filing of a petition for dissolution is determined by reference to the Uniform Child Custody Jurisdiction Law (UCCJL):

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training or personal relationships; or

(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

IND.CODE § 31–1–11.6–3 (1982)

The UCCJL was designed to place the issue of custody in the forum most appropriate to determine the best interests of the child. *In re Marriage of Hudson, supra,* at 116. To ascertain the best interests of the child, the court must consider evidence from the parents themselves, from other persons who might be entrusted with the care of the child and from individuals who can testify about the competence of those persons as custodians. *Id.* Accordingly, the UCCJL includes a "significant connection" provision where the state with jurisdiction is the one which has maximum access to relevant evidence regarding the child's present and future care, protection, training and personal relationships. *See* I.C. 31–1–11.6–3(a)(2).

Under the "significant connection" test, Indiana was the appropriate forum for determination of the custody of Lonna. Because Lonnie, Kathy and Lonna had lived in Indiana for a year and one half before the family moved to Texas, Indiana had access to relevant evidence concerning the past conduct of the parties. Lonnie returned to Indiana in December, 1983, with the intention of residing there indefinitely. Hence, evidence concerning Lonnie's present and future care of Lonna existed in Indiana. Like Lonnie, Kathy left Texas permanently. Evidence concerning Kathy's present and future care of the child existed in Missouri, where Kathy had lived for only four months at the time of the custody hearing. Dealing with markedly similar facts, the court of appeals in *In re Marriage of Hudson* determined that the trial court had subject matter jurisdiction under the UCCJL. 434 N.E.2d at 117. We

are persuaded that the trial court in the instant case did not abuse its discretion in assuming jurisdiction over the custody proceedings.

Kathy objects to the trial court's failure to make a finding on the record of its subject matter jurisdiction. If a court becomes aware at the outset of the proceedings that the custody dispute has an interstate dimension, it must make a determination of subject matter jurisdiction pursuant to the UCCJL. *Clark v. Clark,* (1980) Ind. App., 404 N.E.2d 23, 29. The court's order book should affirmatively reflect the court's consideration of the UCCJL by incorporating its conclusion on this issue, although the failure to do so does not automatically result in reversal. *In re Marriage of Hudson, supra* at 117 n. 12. In the instant case, Kathy's motion to dismiss based on lack of jurisdiction was overruled, a hearing was held regarding custody, and jurisdiction under the UCCJL was properly assumed. The failure to make a finding on the record of subject matter jurisdiction was not reversible error. *Id.*

ISSUE THREE:

The final issue raised on appeal is whether the trial court abused its discretion by awarding custody of Lonna to her maternal grandparents. IND.CODE § 31–1–11.5–21 (Supp.1984) instructs the trial court to award custody of children consistent with their best interests:

(a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community; and

(6) the mental and physical health of all individuals involved.

*Id.*

 It is presumed to be in the best interests of the child to be placed in the custody of the natural parent. *Hendrickson v. Binkley,* (1974) 161 Ind.App. 388, 393, 316 N.E.2d 376, 380. However, I.C. 31-1-11.5-21 does not preclude the trial court from awarding custody to a third party. *Fox v. Fox,* (1984) Ind.App., 466 N.E.2d 789, 791; *Franks v. Franks,* (1975) 163 Ind.App. 346, 323 N.E.2d 678. The welfare and happiness of the child are paramount considerations. *Duckworth v. Duckworth,* (1932) 203 Ind. 276, 179 N.E. 773; *Fox v. Fox, supra.* The trial court must award custody in accordance with the best interests of the child, regardless of who the custodian might be. *Fox v. Fox, supra.* If neither parent is fit to be a custodian, the court can award custody to a third party. *Fox v. Fox, supra; Franks v. Franks, supra; Hendrickson v. Binkley, supra.*

 The trial court in the instant case concluded that neither Lonnie nor Kathy was suitable to be entrusted with the care, control and education of Lonna. The court heard evidence that Kathy had lived in five different homes during the one year period preceding the dissolution hearing. Kathy had not been employed for over a year and had no prospects for a job. Discipline of Lonna had been relinquished to Kathy's boyfriend, Bobby Russell. There was testimony from which the trial court could infer that the corporal discipline administered by Russell was excessive. Also admitted into evidence were pornographic photographs of Kathy and Russell, taken with Kathy's co-operation in the home of the minor child, Lonna.

The evidence disclosed that Lonnie showed little interest in Lonna after he left Texas. Lonnie did not pay child support, and he made no effort to visit Lonna when she was in Indiana. Lonnie had no established household; he spent several days a week with his sister in Brazil and the remaining time with his parents in Dugger.

Only an abuse of discretion would permit the court on appeal to reverse the trial court's decision that Kathy and Lonnie were not fit persons to have the care and custody of Lonna. *See Fox v. Fox, supra.* We cannot say that the determination reached by the trial court was clearly against the logic, facts and circumstances before it.

 The lower court concluded that it would be in Lonna's best interests to place her with the maternal grandparents, the Escotts.[1] Again, the manifest abuse of discretion standard is applicable. *Id.* It is within the discretion of the trial court to award custody consistent with the child's best interests. The reviewing court must give deference to the trial judge, who was in a position to assess the demeanor and credibility of the witnesses. *Id.*

The evidence before the trial court indicated that Mr. Escott was employed. The Escotts had a fixed, permanent residence with sufficient room in their home to accommodate Lonna. They were concerned about Lonna's well-being, as manifested by their request to the Missouri Welfare Department to investigate Lonna's health and safety. Because there is evidence in the record to serve as a basis for the trial court's custody award, we find no abuse of discretion.

Judgment affirmed.

RATLIFF, J., and NEAL, J., concur.

1. Kathy challenges the custody award because the Escotts did not petition for custody of Lonna. The trial court was not constrained to award custody to one of the two petitioning parties. *Fox v. Fox,* (1984) Ind.App., 466 N.E.2d 789 (child made ward of welfare department); *accord Lord v. Lord,* (1982) Ind.App., 443 N.E.2d 847. At the custody hearing, Kathy emphasized that the Escotts had loaned Lonnie money to institute divorce proceedings, and she intimated that even if Lonnie was awarded custody, the child would ultimately be placed in the Escotts' care. The trial court was thus informed that the Escotts desired and were willing to accept custody of Lonna.